**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

FILED

01 DEC 12 AM 11:43

U.S. DISTRICT COURT
N.D. OF ALABAMA

|  |  |  |
|---|---|---|
| ABDULLAH MUHAMMAD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-01-S-407-NE |
| | ) | |
| DEPARTMENT OF THE ARMY; | ) | |
| LOUIS CALDERA, SECRETARY | ) | |
| OF THE ARMY; LT. JAMES WADE; | ) | |
| LT. WILLIAM OUTZUS; | ) | |
| CARL RODENBURG, | ) | |
| | ) | |
| Defendants. | ) | |

ENTERED

DEC 1 2 2001

## MEMORANDUM OPINION

During December of 1996, plaintiff, Abdullah Muhammad, applied, but was not hired, for a security guard position at the United States Army's Redstone Arsenal, located near Huntsville, Alabama. Plaintiff, who is a Moslem, or adherent of the Islamic faith, contends that defendants did not hire him because of his religion, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*. The action presently is before the court on defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, alternatively, for summary judgment under Federal Rule 56. Upon consideration of the pleadings, evidentiary submission, and briefs, this court concludes that summary judgment is due to be entered in favor of defendants.

## I. STANDARD OF REVIEW

Defendants submitted evidence in support of the subject motion. If matters outside the pleadings are presented to and considered by the court when ruling upon a Rule 12(b)(6) motion to dismiss, "the motion shall be treated as one for summary judgment and disposed of as provided in Federal Rule 56, and all parties shall be given reasonable opportunity to present all material made



pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b); *see also, e.g., Wade v. Secretary of the Army,* 796 F.2d 1369, 1376 n.8 (11th Cir. 1986) ("As the decisions from these cases depended on fact-finding from materials outside the pleadings, they should have been summary judgments.") (citing cases of similar facts as to the present action). This allows the court's inquiry to be fact specific, and permits the nonmovant to demonstrate the existence of any genuine issues of material fact. *But see Denis v. Liberty Mutual Insurance Co.,* 791 F.2d 846, 850 (11th Cir. 1986) (recognizing an exception to the requirement that the court afford plaintiff notice of its intent to convert and an opportunity to supplement the record); *Property Management & Investments, Inc. v. Lewis,* 752 F.2d 599, 605 (11th Cir. 1985) (same).

Accordingly, this court treats defendants' motion as one for summary judgment pursuant to Rule 56. The Submission Order entered on May 4, 2001 provided both parties an opportunity to submit evidence and briefs in support of, or opposition to, the motion.[1]

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

---

[1] *See* doc. no. 13.

2

In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.

The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

Plaintiff presently is proceeding *pro se*.[2] Accordingly, the court must afford him a leniency not granted to parties who are represented by counsel. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (observing that allegations in a *pro se* complaint are held to "less stringent standards than formal pleadings drafted by lawyers"); *Woodall v. Foti*, 648 F.2d 268, 271 (5th Cir. 1981)[3] ("A pro se complaint, however inartfully drafted, must be held to less rigorous standards than the formal pleadings prepared by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'") (quoting *Haines*, 404 U.S. at 520-21, 92 S.Ct. at 596).

Even so, the leniency accorded *pro se* litigants is not unqualified. As the Sixth Circuit has

---

[2] Plaintiff was represented for part of the EEOC administrative process by an attorney, John C. Taylor. Plaintiff claims that he fired Taylor by leaving a message on Taylor's answering machine on September 1, 1999. *See* Declaration of plaintiff. The Redstone Arsenal EEO office contends that it was not given notice of Taylor's dismissal from the case until December 21, 1999, when plaintiff wrote that office to give notice of his appeal of the September 21, 1999 dismissal of his complaint. *See* Declaration of Jacquelyn White ¶¶ 8-9; Defendants' evidentiary submission, Tab 6 (Letter dated Jan. 5, 2000).

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

written:

> While courts must apply "less stringent standards" in determining whether pro se pleadings state a claim for which relief can be granted, *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976), *pro se plaintiffs are not automatically entitled to take every case to trial*. As this court has noted, *the lenient treatment generally accorded to pro se litigants has limits*. *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). *Where, for example, a pro se litigant fails to comply with an easily understood court-imposed deadline, there is no basis for treating that party more generously than a represented litigant. Id.*

*Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (emphasis supplied). Plaintiff was aware of his burden under Rule 56 to respond to defendants' motion; that obligation was described clearly in this court's May 4, 2001 Submission Order: "Any evidentiary matters the party opposing [defendants' motion] intends to rely on must be filed by May 29, 2001. Any brief of opposing party must be filed by June 5, 2001."[4] Plaintiff did not respond to defendant's motion, other than to file on May 14, 2001 a "Declaration of Mr. Abdullah Mohammad," which restates plaintiff's view of the facts in this case.

With the foregoing standards in mind, the following facts either are not disputed or are stated in a light most favorable to plaintiff.

## II. STATEMENT OF FACTS

Plaintiff was born Roosevelt Williams, Jr., but changed his name to Abdullah Mohammad in 1977, three years after converting to the Islamic faith of Al-Islam.[5] He is a former United States Marine and veteran of the Vietnam War who served on active duty from 1972 to 1974.[6] He was honorably discharged from the Marine Corps during October of 1974, and enlisted in the Alabama

---

[4] Order of May 4, 2001 (doc. no. 13) at unnumbered page 1.

[5] Defendants' evidentiary submission, Tab 3 (Profile of Imam Abdullah Muhammad).

[6] Complaint ¶ 8.

4

Army National Guard later that same year.[7]  He became a member of the National Guard's Security and Law Enforcement Branch at Redstone Arsenal during August of 1977, and remained there until his retirement on April 10, 1992.[8]

Plaintiff interviewed for a security guard position with defendant Captain Carl Rodenburg at the Redstone Arsenal personnel office during December of 1996.[9]  Plaintiff was not hired, allegedly because Capt. Rodenburg preferred to "hire[] his retired buddies."[10]  Plaintiff claims not only that he was denied consideration for employment as a security guard, but also that a "less qualified white male" was hired in his place.[11]  Plaintiff further claims that he was the "only Muslim security guard, ever on the Security Guard Force," and that he was "badly harassed and discriminated against from 1985 — April 10, 199[2]."[12]

Despite his non-selection for the position during December of 1996, plaintiff claims that he was informed by a friend, Lt. Autry Sparks, that the Redstone Arsenal personnel office planned to hire approximately "8-20" additional security guards by May of 1997.[13]  In an apparent confirmation of Lt. Sparks's tip, plaintiff received a letter from the personnel office dated May 2, 1997, inquiring whether he still desired a permanent position at Redstone Arsenal.[14]  Plaintiff claims, however, that Lt. Sparks told him Capt. Rodenburg and personnel office selection officials were "draging [sic] the

---

[7] *Id.*

[8] Declaration of plaintiff (doc. no. 14) ¶ 2.

[9] *Id.*, Tab 3 (Letter dated August 4, 1997 to "E.E.O. Director"), at 1.

[10] *Id.* at 2.

[11] Defendants' evidentiary submission, Tab 1 (EEO Telephonic/Walk-in Counseling Intake Record of March 8, 1999).

[12] *Id.*, Tab 3 (Letter dated August 4, 1997 to "E.E.O. Director"), at 3.  The court assumes plaintiff intended to state that he was harassed until his retirement on April 10, 1992.

[13] *Id.* at 2.

[14] *Id.* at 3.

5

[sic] feet about hiring these guards," because "Capt. Rodenburg do [sic] not want to hire me because when I was on the Guard Force from August 1977 to April 10, 19[92], I file [sic] union and E.E.O complaints against [Capt. Rodenburg], and Security Guard Force."[15]  As a result of these filings, plaintiff claims that his name was "black ball[ed]" on the Security Guard Force, and at the Redstone Arsenal personnel office.[16]  Consequently, plaintiff asserts that, whereas on June 10, 1997, he learned from a Gloria Harris in the Redstone Arsenal personnel office that his name was at the top of the list of those to be hired, "and was in the hands of Capt. Carl Rodenburg, for selection," when he again contacted Harris on July 21, 1997, "she informed me that the selection was back, and she did not see my name on the selection ...."[17]

Meanwhile, plaintiff claims that he attempted to file a complaint in June of 1997 with the Redstone Arsenal EEO office because he had been discriminated against on the basis of his religion, after he was not hired as a security guard in December of 1996.[18]  Plaintiff asserts that he was told

---

[15] *Id.* at 2-3.

[16] *Id.* at 3.

[17] *Id.*

[18] Defendants' evidentiary submission, Tab 3 (Army Form 2590-R), at Item 16.
There is some confusion as to when the discriminatory incident alleged here actually took place.  Plaintiff claims on some documents that he was non-selected by defendants in December of 1996: *see, e.g.,* Defendants' evidentiary submission, Tab 2 (Certification of Rights and Responsibilities), at 2; *id.,* Tab 3 (Letter dated August 4, 1997), at 1; *id.,* Tab 3 (Form 2590-R), at Item 8.  Other documents specify December 15, 1996: *see, e.g., id.,* Tab 3 (Form 2590-R), at Item 8.  Other documents specify a date of January of 1997: *see, e.g., id.,* Tab 3 (Complaint dated Nov. 25, 1997), at 1.
In fact, it appears that plaintiff *interviewed* for the security guard position at issue here on December 15, 1996. *See id.,* Tab 8 (Statement in Support of Appeal), at 2.  It appears also that the position was filled sometime in December of 1996, according to a conversation plaintiff had with Lt. Sparks; Sparks allegedly told plaintiff that Capt. Rodenburg had hired one of his "retired buddies, a clerk that was not military personnel with military experience, no security guard experience."  Defendants' evidentiary submission, Tab 3 (Letter dated August 4, 1997 to "E.E.O. Director"), at 2.
Further, while plaintiff ostensibly could be claiming that the most recent occurrence of the discriminatory non-selection by defendants took place between July 10, 1997 and July 21, 1997, in light of the conversations he had with Lt. Autry Sparks and Redstone Arsenal personnel officer Gloria Harris, *see supra* text accompanying notes 13-17, plaintiff consistently claims that the discriminatory charge here is based on the December 1996 job announcement for which he was not hired. *See infra* text accompanying notes 25, 28.

by a "Caucasian female working the E.E.O office at Redstone, that [he] could not file [his] case at Redstone, [and] had to file [his] case in Birmingham District office.  She gave [him] the number to the Birmingham office in May or June 1997."[19]  Plaintiff later stated that this conversation took place "[o]n or about Mid June 1997" with "E.E.O. specialist Ms. Martha C. Miller."[20]   Plaintiff later explained that he had been directed to the Birmingham District EEOC office because he was a *former* (as opposed to a *current*) federal employee, and was thus bringing his complaint as a "private citizen."[21]

Plaintiff returned to the Redstone Arsenal EEO office about "two or three weeks later in July 1997,"[22] because he "was not happy with information that [he] received from the first Caucasian female ... [O]n the second occasion, again a different Caucasian female working in the E.E.O office at Redstone," told plaintiff that he "could not file [his] case at Redstone," and that he "would have to file [his] case in [the] Birmingham District office."[23]  However, plaintiff later clarified that he spoke with the *same* EEO counselor on each of these visits to the Redstone Arsenal EEO office — Martha C. Miller — who told plaintiff that "she was sure [plaintiff] had to go to Birmingham."[24] Plaintiff claims that he "had been a former E.E.O counselor from 1980-82, *and* [he] *knew better*."[25]

Despite his reluctance, plaintiff contacted the Birmingham District EEOC office on August 4, 1997, to file a complaint alleging that he had been discriminated against because of his religion

---

[19] *Id.*

[20] Declaration of plaintiff at 1.

[21] Defendants' evidentiary submission, Tab 3 (Letter dated October 3, 1997 to Cynthia G. Pierre), at 2.

[22] Declaration of plaintiff at 1.

[23] Defendants' evidentiary submission, Tab 3 (Army Form 2590-R), at appended page 1.

[24] Declaration of plaintiff at 1.

[25] Defendants' evidentiary submission, Tab 3 (Army Form 2590-R), at appended page 1 (emphasis supplied).

when Redstone Arsenal failed to hire him for the security guard position in December of 1996.[26]

The Birmingham EEOC office informed plaintiff in a letter dated September 30, 1997 that it did not

have jurisdiction over his complaint.[27] Plaintiff wrote the Birmingham office once more, on October

3, 1997, to assert that that office *did* have jurisdiction over his discrimination complaint, because he

no longer was a federal employee.[28]

Plaintiff's next action was to file "an employment discrimination action" *pro se*, on

November 25, 1997, in the Circuit Court of Madison County, Alabama, against the Secretary of the

United States Army, alleging "religious discrimination when the Company hired whites who had no

experience in guard force or military experience, which were qualifications necessary to be

considered for the position."[29]  Plaintiff asserted that he "was denied a position as a federal security

guard in January 1997 because he is a Muslim."[30]  Plaintiff contended that he had been on the top

of the selection list for a federal security guard position, but that he was not hired because of prior

"problems" with Capt. Carl Rodenburg and two other supervisors who participated in his interview.[31]

Plaintiff further claimed that he had been told by Lt. Autry Sparks that his non-selection was a result

of the fact that his interviewers "did not like [plaintiff] because of [his] religion Al-Islam and

[because he was] a Muslim."[32]

The state court action was removed to this court on March 23, 1998, pursuant to 28 U.S.C.

---

[26] *Id.*, Tab 8 (Plaintiff's statement in support of appeal), at 3.

[27] *Id.*, Tab 3 (September 30, 1997 Letter to plaintiff).

[28] *Id.*, Tab 3 (Letter dated October 3, 1997 to Cynthia G. Pierre), at 2.

[29] *Id.*, Tab 8 (Memorandum Opinion entered May 1, 1998, in *Mohammad v. West*), at 1.

[30] *Id.*

[31] *Id.*, Tab 3 (Complaint), at 1.

[32] *Id.*

§§ 1441 and 1442(a)(1).[33]  The magistrate judge to whom the case was assigned dismissed the action on May 1, 1998, for plaintiff's failure to "initiate or exhaust the required administrative procedures."[34]  Specifically, the magistrate found that plaintiff had failed to "seek EEO counseling or file an EEO complaint related to his non-selection as a security guard in January 1997."[35]  The magistrate based his opinion on the March 13, 1998 affidavit of Redstone Arsenal EEO Manager Ida Y. Kilgore, who stated that, upon her "review of the EEO files within [her] control, Mr. Abdullah Muhammad did not seek EEO counseling or file an EEO complaint relating to his not being selected as a security guard in January 1997."[36]

On March 8, 1999, approximately ten months after the foregoing dismissal, and about fourteen months after plaintiff's non-selection for the security guard position, plaintiff contacted an EEO counselor at Redstone Arsenal to complain that he had not been hired in December of 1996 for position GS-008505, Announcement AH-7-0069 (1996), because he was Muslim.[37]  According to plaintiff, "[e]ven though my allegations of discrimination were now 2 years old, the EEO office accepted my Complaint as timely filed because it admitted that I was given inaccurate information from their office on the procedures for filing Complaints against Redstone when I was directed to the EEO office in Birmingham in 1997 by the EEO office of Redstone."[38]

During the EEO counseling process, plaintiff acknowledged in writing on an EEO certification form that he had been made aware of his rights and responsibilities, and asserted that

---

[33] *Id.*, Tab 8 (Memorandum Opinion entered May 1, 1998 in *Mohammad v. West*), at 1.

[34] *Id.* at 2.

[35] *Id.*

[36] *Id.*, Tab 3 (Affidavit of Ida Y. Kilgore), at 2.

[37] *Id.*, Tab 1 (Plaintiff's EEO Telephonic/Walk-in Counseling Intake Record).

[38] *Id.*, Tab 8 (Plaintiff's Statement in Support of Appeal), at 4.

an attorney, John C. Taylor, was representing him.[39]  Plaintiff acknowledged that "all official correspondence, documents and decision(s) will be served on my attorney, and not on me."[40]  The form also included plaintiff's description of his complaint:

> Specific Allegation(s): Religious discrimination of me being Muslim, in my religion Al-Islam.  As a religious leader in the faith of Al-Islam, active in the community of Huntsville as a (Imam) minister leader.
>
> Date of Incident:  12-15-96[41]

The specific date on which plaintiff received notice of his right to file a complaint with the EEO office, pursuant to 29 C.F.R. § 1614.106(b), is not clearly defined by the evidence submitted to this court.  Even so, it is clear that plaintiff filed a formal complaint with the Redstone Arsenal EEO office on May 27, 1999.[42]  In that complaint, plaintiff stated that the most recent discriminatory actions taken against him occurred on May 1, 1997 and December 15, 1996.[43]  That is the only instance in which plaintiff complained of a May 1, 1997 discriminatory event, however.  As a result, the court focuses on the December of 1996 incident complained of throughout plaintiff's EEOC proceedings and subsequent litigation.

The Redstone Arsenal EEO office mailed a letter directly to plaintiff on June 4, 1999, rather than to his attorney, requesting that he clarify his allegations of religious discrimination.[44]  It appears that the EEO office did not receive a return receipt for the certified letter, and so remailed the letter on June 16, 1999.  The letter was written by Bernard H. Collier, an EEO officer at Redstone Arsenal,

---

[39] *Id.*, Tab 2 (April 22, 1999 Certification of Rights and Responsibilities).

[40] *Id.* at 2.

[41] *Id.*

[42] *Id.*, Tab 3 (Plaintiff's formal EEOC complaint), at Army Form 2590-R.

[43] *Id.*

[44] *Id.*, Tab 4 (Request for Specificity).

10

and notified plaintiff that he had fifteen calendar days from the his receipt of the letter to respond

to the request for clarification, because:

> [y]ou alleged to be a victim of discrimination based on religion (Al-Islam, Islamic
> Faith, Muslim).  In your cover letter dated May 27, 1999 you stated that you were
> filing a formal complaint in the non-selection for Job Announcement AAH-7-0069,
> Security Guard, GS-0085-05, dated 11 Dec 96.  On your 2590-R, dated May 27,
> 1999 under Item 18, you stated that on or about May 1, 1997 you were told that you
> could not file an EEO complaint with the EEO office at Redstone Arsenal.  You also
> stated that as an active member in your religion Al-Islam and as a Muslim Imam
> Leader you "got hell" from 1977 to 1980 from management officials and supervisors
> in the Security Guard Force.  *You make no mention of the fact that you were non-
> selected for the Security Guard position mentioned in your cover letter.  In order to
> continue to process your complaint, clarification of your allegation(s) must be
> provided.  Please specify if your allegation is the non-selection issue raised in your
> cover letter, or if your allegation is that your [sic] were treated differently by the
> Security Guard Force from 1977 to 1980 because of your being active in your
> religious beliefs, or are both of these allegations?*[45]

The letter also explained that plaintiff's "[f]ailure to respond may result in the cancellation of your

complaint of discrimination based on failure to prosecute."[46]

Plaintiff received the request for clarification on July 21, 1999.[47]  He responded the following

day in a handwritten letter that purported to clarify his allegations.[48]   The response was not

efficacious.  Thus, on July 29, 1999, the Redstone Arsenal EEO again office wrote plaintiff, but this

time through a letter directed to his attorney, to inform plaintiff that his "exact allegations are still

unclear."[49]  The July 29, 1999 letter stated that:

> This office believes he alleges to be a victim of discrimination based on religion (Al-
> Islam, Islamic Faith, Muslim) in the following actions:

---

[45] *Id.* (emphasis supplied).

[46] *Id.*

[47] *Id.*, Tab 4 (Return Receipt).

[48] *Id.* (Plaintiff's Letter of July 22, 1999).

[49] *Id.* (Letter of July 29, 1999 to John C. Taylor).

11

(1) Non-selection on 3 Security Guard, GS-0085-05, positions by CPT Rodenburg, 1 selection being made on 13 May 97 and the other 2 selections being made on 19 Jun 97 (from Job Announcement AAH-7-0069, dated 11 Dec 96).

(2) Unfair treatment by the Security Guard Force during his earlier employment from 1977 to 1992.

If allegation (2) is correctly stated, more information is required before a decision to accept or dismiss can be made. We need to have specific actions thought of as unfair, dates and individuals involved. *Please answer this request for further specificity within the next 10 days.*[50]

The Redstone Arsenal EEO office did not receive a response to its July 29, 1999 letter for further specificity; as a result, EEO Specialist Jacquelyn White wrote an August 26, 1999 "Memorandum for Record" describing plaintiff's complaint and her efforts to contact plaintiff's attorney, John C. Taylor.[51] White "called to speak with the attorney of record to see if he was going to respond to the request. No one answered the phone but I left a message asking to call in reference to the request for specificity on his client Mr. Muhammad."[52]

White finally succeeded in speaking with Taylor about plaintiff's complaint on or about September 1, 1999. White stated in another "Memorandum for Record" that "[d]uring the phone conversation I asked if Mr. Taylor intended on answering the request for specificity as it was currently 26 days since he received the request (11 days past the [15] day suspense)."[53] According to White, plaintiff's attorney responded that "he was in the middle of an important murder case, but ... he would get me something in the mail stating when he could respond or giving me the actual

---

[50] *Id.* at unnumbered page 1.

[51] *Id.* (White memorandum dated August 26, 1999).

[52] *Id.*

[53] *Id.* (White memorandum dated September 3, 1999). The court assumes that Ms. White made a typographical error in her Memorandum for Record, as she states in her affidavit of May 1, 2001 that Mr. Taylor was "11 days past the 15 day suspense ...." Declaration of Jacquelyn White (doc. no. 9) ¶8.

response."[54]   White reminded Taylor that "untimely submission of the information that was requested could result in dismissal of Mr. Muhammad's complaint."[55]

Twenty additional days passed without a response, either from plaintiff or his attorney.

Consequently, the Redstone Arsenal EEO office issued a final decision dismissing plaintiff's complaint on September 21, 1999,[56] for failure to respond to repeated requests for clarification of his claims, and pursuant to 29 C.F.R. § 1614.107(g).[57]  Plaintiff's attorney, John C. Taylor, signed a certified mail receipt for the final agency decision on September 24, 1999.[58] The decision notified plaintiff that he had thirty days from receipt to appeal the dismissal to the EEOC, pursuant to 29 C.F.R. § 1614.402(a).[59]

Plaintiff's next contact with the Redstone Arsenal EEO office did not occur until three more months had elapsed, when he notified the office, by means of a letter dated December 21, 1999, that, as of September 1, 1999, he was no longer represented by John C. Taylor, and would be proceeding *pro se*.[60]  Plaintiff also complained that past EEO correspondence had not reached him in a timely

---

[54] *Id.*

[55] *Id.*

[56] Defendants' evidentiary submission, Tab 4 (Dept. of Army Final Decision).

[57] 29 C.F.R § 1614.107(g) now can be found at 29 C.F.R. § 1614.107(a)(7).  That section requires a federal agency to dismiss a complaint:

> [w]here the agency has provided the complainant with a written request to provide relevant information or otherwise proceed with the complaint, *and the complainant has failed to respond to the request within 15 days of its receipt or the complainant's response does not address the agency's request, provided that the request included a notice of the proposed dismissal.*

29 C.F.R. § 1614.107(a)(7) (emphasis supplied).

[58] Defendants' evidentiary submission, Tab 4 (Dept. of Army Final Decision), at unnumbered page 1.

[59] 29 C.F.R. § 1614.402(a) provides that "any dismissal of a complaint or a portion of a complaint or any final decision may be appealed to the Commission within 30 days of the complainant's receipt of the dismissal or final decision."

[60] Defendants' evidentiary submission, Tab 5 (Plaintiff's letter to Kate Love dated December 21, 1999).

fashion, and that he wanted to appeal the agency's September 21, 1999 Final Decision.[61]  The EEO

office responded that plaintiff had failed to inform the office that he had fired his lawyer, as he had

agreed to do when he signed a "Certification of Rights and Responsibilities" on  April 22, 1999.[62]

The letter also emphasized that plaintiff was required to follow the procedures for an appeal of the

final agency decision, namely that he had "to appeal **within 30 days.**"[63]

Plaintiff's December 21, 1999 notice of his intent to appeal was forwarded to the EEOC's

Office of Federal Operations on March 21, 2000.[64]  That office dismissed plaintiff's appeal on

November 9, 2000, because:

> A copy of the certified mail return receipt card reveals that the agency's decision was
> received by complainant's attorney (as designated in the complaint) on September
> 24, 1999.  When a complainant designates an attorney as representative, time frames
> for receipt of materials are computed from the time of receipt by the attorney.  29
> C.F.R. § 1614.605(d).  A review of the decision reveals that the agency properly
> advised complainant (through his representative) that he had 30 calendar days after
> the receipt of its final decision to file his appeal with the Commission.
>
> Although complainant's December 21, 1999 letter to the agency stated that he "fired"
> his attorney representative as of September 1, 1999, complainant has not claimed or
> shown that he informed the agency prior to the December 21, 1999 letter that he no
> longer was represented by an attorney.  Consequently, complainant has not offered
> adequate justification for an extension of the applicable time limit for filing his
> appeal.  Accordingly, pursuant to § 1614.403(c) complainant's December 21, 1999
> appeal is hereby **DISMISSED.**[65]

Plaintiff was informed further that he had a right to file a civil action within ninety calendar days

---

[61] *Id.*

[62] *Id.*, Tab 6 (Letter dated January 5, 2000) (referring to Defendants' evidentiary submission, Tab 2 (Certification of Rights and Responsibilities), at 2).

[63] Defendants' evidentiary submission, Tab 6 (Letter dated January 5, 2000) (emphasis in original).  Plaintiff signed a certified receipt for the January 5, 2000 letter on January 11, 2000.  *Id.* (Certified mail receipt).

[64] *Id.*, Tab 7 (Dismissal of Appeal), at 1.

[65] *Id.* (emphasis in original).

14

from his receipt of that decision.[66]  A handwritten, unsigned note on the face of the Office of Federal

Operations' dismissal states that plaintiff received that decision on November 16, 2000.[67]  The

"Certificate of Mailing" on the last page of the Office of Federal Operations' dismissal notice states,

however, that "[f]or timeliness purposes, the Commission will presume that this decision was

received within five (5) calendar days after it was mailed.  I certify that this decision was mailed to

complainant, complainant's representative (if applicable), and the agency on:  Nov 09 2000 [date

stamp]."[68]  Plaintiff thus was presumed to have received the decision of the EEOC Office of Federal

Operations, at the latest, by November 14, 2000.  *See* Fed. R. Civ. P. 6(a).

Plaintiff filed the present action on February 13, 2001, exactly ninety-one days after the last

day on which he was presumed by the Certificate of Mailing to have received the decision of the

EEOC Office of Federal Operations dismissing his complaint.  Plaintiff filed suit pursuant to the

Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging that he was "refused employment on

account of his religion" by the Department of the Army, and contending that he received his right

to sue letter on November 16, 2000.[69]

### III. DISCUSSION

### A.    Plaintiff's Timely Filing of the Present Action

As a threshold matter, it is not clear that plaintiff's action in this court was filed in a timely

fashion.  Plaintiff was notified that he had ninety days from the presumptive date of receipt of the

EEOC's Office of Federal Operations' dismissal of his appeal to file an action in federal court.[70]

---

[66] *Id.* at 2.

[67] *Id.* at 1.

[68] *Id.* at 3.

[69] Complaint at 1.

[70] Defendants' evidentiary submission, Tab 7(Dismissal of Appeal), at 2.

Plaintiff asserts, and defendants do not contest, that he received the dismissal of his appeal on November 16, 2000.[71] Absent from the record, however, is any confirmation of that fact, other than an unsigned, handwritten note on the EEOC's decision letter to plaintiff.[72] These facts are important in light of the fact that the "Certificate of Mailing" attached to that decision presumed plaintiff's receipt on November 14, 2000, thus making his February 13, 2001 filing of the instant action one day late.

There is little guidance from the Eleventh Circuit as to how to treat this issue; other federal courts are instructive, however, and appear consistent in their determination that the actual date of receipt will govern if confirmed by evidence. *See Nguyen v. Inova Alexandria Hospital,* No. 98-2215, 1999 WL 556446, at *3 (4th Cir. July 30, 1999) (unpublished disposition); *Seitzinger v. Reading Hospital and Medical Center*, 165 F.3d 236, 239 (3d Cir. 1999) ("When the actual date of receipt is known, that date controls."); *Dixon v. Digital Equipment Corp.*, No. 92-1483, 1992 WL 245867, at *1 (4th Cir. Sept. 30, 1992). When that date is in dispute, these courts have applied Federal Rule of Civil Procedure 6(e), which adds three days to any proscribed period where notice is provided by mail, and receipt commences a limitations period. Fed. R. Civ. P. 6(e); *see also Nguyen, supra*; *Seitzinger, supra*; *Dixon, supra*. Because the date of receipt is not in dispute here, this court calculates the ninety-day filing period from the date of plaintiff's asserted receipt of the decision, November 16, 2000, to find that plaintiff's filing here is timely.

**B.      Doctrine of *Res Judicata* and Plaintiff's Previous Action**

Defendants suggest that plaintiff's claim may be precluded by the doctrine of *res judicata*,[73]

---

[71] *Id.* at 1.

[72] *Id.*

[73] Memoradum in Support at 20.

because plaintiff previously litigated the issue of his December 1996 non-selection for the security guard position by the Redstone Arsenal personnel office in federal court.[74] "Under res judicata, also known as claim preclusion, a final judgment on the merits bars the parties to a prior action from re-litigating a cause of action that was or could have been raised in that action." *Piper Aircraft Corp. v. Teledyne Industries, Inc.*, 244 F.3d 1289, 1296 (11th Cir. 2001). The Eleventh Circuit recently observed that:

> The Supreme Court has explained that following "a full and fair opportunity to litigate[, res judicata] protects [a party's] adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54, 99 S.Ct. 970, 973-74, 59 L.Ed.2d 210 (1979).

*O'Connor v. PCA Family Health Plan*, 200 F.3d 1349, 1355 (11th Cir. 2000).

Before *res judicata* will apply to bar an action before this court, four prerequisites must be satisfied: "(1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action." *Id.* (citing *Israel Discount Bank Ltd. v. Entin*, 951 F.2d 311, 314 (11th Cir. 1992); *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1550 (11th Cir. 1990)). If the court finds all four preconditions are present, it must then consider "whether the claim in the new suit was or could have been raised in the prior action; if the answer is yes, res judicata applies." *Piper Aircraft Corp.*, 244 F.3d at 1296. A subsequent action will not be barred by *res judicata* "if even one of these elements is missing." *Id.* (citing *Hart v. Yamaha-Parts Distributors, Inc.*, 787 F.2d 1468, 1473 (11th Cir. 1986)).

On May 1, 1998, United States Magistrate Judge Harwell G. Davis, III dismissed, with

---

[74] *See* Defendants' evidentiary submission, Tab 8 (Memorandum Opinion).

prejudice, *Abdullah Muhammad v. Togo D. West, Jr., Secretary of the Army*, CV-98-HGD-0674-NE, in which plaintiff claimed that he had not been selected for a security guard position in January of 1997 because of his religion. In a memorandum opinion entered concomitant with that order, Judge Davis wrote that plaintiff's "complaint is not cognizable in this court," because plaintiff "did not initiate or exhaust the required administrative procedures."[75] It is immediately unclear whether a final judgment was rendered on the merits in that action, because the May 1, 1998 Order dismissed plaintiff's case "with prejudice" for failure to exhaust his administrative remedies. Although the Eleventh Circuit has not yet directly answered this question, the facts and circumstances here, along with other relevant, supportive case law, lead this court to find that no final judgment was rendered on the merits in plaintiff's previous action and, thus, that *res judicata* cannot be invoked to bar the present action.

First, defendants argue that case law in this Circuit establishes that a "dismissal of a complaint with prejudice satisfies the requirement that there be a final judgment on the merits."[76] Defendants cite the Eleventh Circuit's decision in *Citibank, N.A. v. Data Lease Financial Corp.*, 904 F.2d 1498 (11th Cir. 1990), for this proposition. That case is readily distinguishable. In *Citibank*, the Eleventh Circuit considered a foreclosure action — rather than a Title VII claim — by Citibank against Data Lease Financial Corporation for collateral the defendant had given as security for loans made to it by Citibank. *Id.* at 1499. Data Lease entered into a settlement agreement with Citibank that included Data Lease's consent to "dismiss all third party claims 'with prejudice.'" *Id.* at 1500. Citibank argued that those dismissals constituted an "adjudication on the merits," thus barring Data

---

[75] Defendants' evidentiary submission, Tab 8 (Memorandum Opinion), at 2.

[76] Memorandum in Support at 20-21 (quoting *Citibank, N.A. v. Data Lease Financial Corp.*, 904 F.2d 1498, 1501 (11th Cir. 1990)).

Lease's subsequent vicarious liability suit against Citibank. *Id.* The district and appellate courts both agreed. However, the parties had *stipulated* to the district court's order dismissing Data Lease's third-party complaints against Citibank with prejudice: "It is clear that a *stipulation of dismissal with prejudice* ... at any stage of a judicial proceeding, normally constitutes a final judgment on the merits which bars a later suit on the same cause of action." *Id.* at 1501-02 (emphasis supplied). No such stipulation is present in this case.

Further, defendants concede that, "[i]n ordinary circumstances a *second action on the claim is not precluded by dismissal of a first action for prematurity or failure to satisfy a precondition to suit.*"[77] While defendants quote a respected treatise to argue that "special circumstances" exist that make it "manifestly unfair to permit a second action after satisfying a precondition that easily could have been satisfied at the time of the prior action,"[78] it does not appear that such special circumstances are present here.[79]

Moreover, this court finds persuasive the decisions of other district courts that have considered this issue in the context of a Title VII action. For example, another district court within this Circuit has written:

---

[77] *Id.* (quoting 18 Wright, Miller & Cooper, *Federal Practice and Procedure* § 4437 (1981)) (emphasis supplied).

[78] *Id.* (quotations omitted).

[79] Professors Wright, Miller and Cooper describe just one case to embody the concept of special circumstances. In *Stebbins v. Nationwide Mutual Insurance Co.*, 528 F.2d 934 (4th Cir.), *cert. denied*, 424 U.S. 946, 96 S.Ct. 1417, 47 L.Ed.2d 353 (1974), the plaintiff's first action was dismissed — after a full trial on the merits — because the plaintiff failed to file suit within the statutorily required time after receiving his right to sue letter from the EEOC. Although the first action had not produced a judgment on the merits, the court held that the plaintiff could not bring the second action (which was one of a "long string of actions") because he had "aborted the trial in his efforts to test the statutory procedures," and because the defendant had been forced to bear the burden of a full trial in the first action. 18 *Federal Practice and Procedure* § 4437, at 350-31 (quoting *Stebbins*, 528 F.2d at 937-38 & n.6). A second action would have caused additional burden to both the defendant and the court, specifically because the plaintiff there had "intentional[ly] disregard[ed] ... the statutory precondition." *Id.*

The problem with defendants' [*res judicata*] analysis, however, is that this Court did not previously rule on the merits of plaintiff's wrongful discharge; the Court dismissed *Solar I* with prejudice because plaintiff failed to exhaust his administrative remedies. The doctrine of res judicata does not apply where, as here, there was not a final adjudication on the merits of the first cause of action.

*Solar v. Merit Systems Protection Board*, 600 F. Supp. 535, 536 (S.D. Fla. 1984) (relying on *Segal v. American Telephone and Telegraph Co.*, 606 F.2d 842, 845 (9th Cir. 1979); Restatement (Second) Judgments § 48.1(2) (1973); 19 Wright & Miller, *Federal Practice and Procedure* § 4436, at 345 (1981)); *see also Smith v. Smith*, No. CIV A 96-W-1419-N, 1997 WL 33121865, at *3 (M.D. Ala. Nov. 29, 1997) (stating, in case in which plaintiff's first lawsuit was dismissed with prejudice "because of plaintiff's failure to exhaust administrative remedies," that *"[r]es judicata* does not apply unless (1) there is a final judgment on the merits .... Clearly, the first requirement is not present in this case, and *res judicata* is inapplicable."); *Talley v. Southeastern Pennsylvania Transportation Authority*, No. CIV. A. 93-3060, 1993 WL 496702, at *3 (E.D. Pa. Nov. 30, 1993) (holding, where plaintiff's previous action was dismissed for failure to exhaust administrative remedies, that "[t]he doctrine of res judicata does not apply where, as here, the Court did not render a final adjudication on the merits of the prior action"); *see also, e.g., Wright v. Montgomery County*, No. CIV. A. 96-4597, at *4 (E.D. Pa. March 15, 1999) (relying on *Talley*, 1993 WL 496702, at *3, and *Solar*, 600 F. Supp. at 536, for the proposition that *res judicata* does not bar subsequent action where previous action was dismissed for failure to exhaust administrative remedies).

Following the lead of these courts, then, this court finds that plaintiff's previous Title VII action on the matter of his non-selection for a security position at Redstone Arsenal did not dispose of his Title VII claim on its merits.

**B.** *De Novo Review* **of the Merits of Plaintiff's Complaint**

Plaintiff asks this court to evaluate the merits of his Title VII claim for religious discrimination,[80] while defendants argue that the "sole issue properly before this Court is whether ... the EEOC was correct in dismissing Mr. Muhammad's appeal for untimeliness."[81] As is described more fully above, the Department of the Army issued a final agency decision dismissing plaintiff's EEO complaint on September 21, 1999, pursuant to 29 C.F.R. § 1614.107(g), for his failure to respond to repeated requests for specificity.[82] The EEOC Office of Federal Operations ultimately dismissed plaintiff's appeal of the agency decision because he failed to file his appeal with the EEOC within thirty days of the receipt of that decision.[83]

It is an often-repeated maxim that a federal employee must properly exhaust his administrative remedies before he can pursue a Title VII action in federal court. *See, e.g., Loeffler v. Frank,* 486 U.S. 549, 559, 108 S.Ct. 1965, 1971, 100 L.Ed.2d 549 (1988) (noting that Title VII permits "an aggrieved employee to file a civil action in federal district court, provided the employee has met certain requirements regarding exhaustion of administrative remedies"); *Brown v. General Services Administration,* 425 U.S. 820, 832-333, 96 S.Ct. 1961, 1967-68, 48 L.Ed.2d 402 (1976) (eschewing the suggestion that Congress intended to permit plaintiffs to circumvent its "rigorous administrative exhaustion requirements and time limitations" by allowing them "immediate access to the courts"); *Crawford v. Babbitt,* 186 F.3d 1322, 1326 (11th Cir. 1999) ("A federal employee must pursue and exhaust her administrative remedies as a jurisdictional prerequisite to filing a Title

---

[80] Complaint ¶¶ 13-14.

[81] Memorandum in Support at 13.

[82] Defendants' evidentiary submission, Tab 4 (Dept. of Army Final Decision); *see also supra* text accompanying notes 47-67.

[83] Defendants' evidentiary submission, Tab 7 (Dismissal of Appeal).

VII action.") (citing *Brown*, 425 U.S. at 832-33, 96 S.Ct. 1967-68); *Increase Minority Participation By Affirmative Change Today of Northwest Florida, Inc. (IMPACT) v. Firestone*, 893 F.2d 1189, 1196 (11th Cir. 1990) (citing *Sanchez v. Standard Brands, Inc.*, 755 F.2d 15165, 1522 (5th Cir. 1970)); *Wade*, 796 F.2d at 1373 ("A federal employee plaintiff seeking to litigate ... claims of Title VII discrimination in federal court is required to have exhausted administrative remedies ....") (citing *Lewis v. Smith*, 731 F.2d 1535,1540 (11th Cir. 1984)); *Manning v. Carlin*, 786 F.2d 1108, 1109 (11th Cir. 1986) (referring to the jurisdictional requirement "of exhaustion of administrative remedies in a Title VII case") (relying on *Chappell v. Emco Machine Works Co.*, 601 F.2d 1295 (5th Cir. 1979)); *United States v. Feaster*, 410 F.2d 1354, 1368 (5th Cir. 1979); *Baker v. Peters*, 145 F. Supp. 2d 1251, 1255 (M.D. Ala. 2000) ("A federal employee's failure to undergo these administrative procedures and to adhere to the stated deadlines is a ground for dismissal of her action for failure to state a claim.") (citing *Manning*, 786 F.2d at 1109).

In the event a plaintiff fails to exhaust administrative requirements, and the agency consequently dismisses the complaint (thus not reaching the merits of a complaint), this court is not permitted to reach the merits of a plaintiff's complaint. The former Fifth Circuit clearly stated this rule in a factually similar decision binding on this court when it concluded: "*If the agency does not reach the merits of the complaint because the complainant fails to comply with the administrative procedures the Court should not reach the merits either.*" *Johnson v. Bergland*, 614 F.2d 415, 417 (5th Cir. 1980) (adopting the decision and language of the district court) (emphasis supplied); *see also Wade v. Secretary of the Army*, 796 F.2d 1369, 1376-77 (11th Cir. 1986) (acknowledging that *Johnson v. Bergland* is binding precedent in the Eleventh Circuit).

In *Johnson v. Bergland*, the former Fifth Circuit considered the Title VII discrimination

22

complaint of a federal employee who — as here — failed to respond to administrative requests for additional specific details about his complaints. 614 F.2d at 417. The *Johnson* Court affirmed the dismissal, explaining:

> In the present instance, the employee did resort to administrative remedies, but his administrative complaint was vacated because he failed to comply with the valid administrative requirement that he make his generalized complaints more specific. In our opinion, the plaintiff's suit was properly dismissed for this failure to pursue and to exhaust his administrative remedies. Had he complied with the agency request for more specific information, the agency could have ruled on the merits of his complaint, but, due to his default, it was unable to do so.

> The administrative complaint procedures must be complied with. If they are, and an adverse decision is rendered on the merits of the complaint, then a complainant is entitled to a de novo hearing in federal court. *However, if the agency does not reach the merits of the complaint because the complainant fails to comply with the administrative procedures the Court should not reach the merits either. Otherwise, the complainant might be dilatory at the administrative level, knowing that he can get into federal court anyway.*

*Id.* at 417-18 (internal quotation marks and citations omitted) (emphasis supplied); *see also Wade*, 796 F.2d at 1376 (same).

The Eleventh Circuit again considered this issue in *Wade v. Secretary of the Army*, in which federal employees asserted that, although their complaints were dismissed by the agency for failure to comply with "procedural requirements," they were entitled to seek *de novo* review of their discrimination claims in federal court. 796 F.2d at 1375. The *Wade* Court noted that cases in which plaintiffs' complaints had been dismissed by agencies for failure to exhaust, and wherein plaintiffs sought to have a federal court examine the merits of the complaint, were common. The court concluded that, in every case it reviewed, "the district court has independently considered the facts forming the basis of the adverse administrative determination, found that the administrative complaint was indeed deficient and granted dismissal or (summary judgment) against the plaintiff

for failure to exhaust administrative remedies." *Id.* The Court of Appeals further concluded that,

"[i]n no case has the court declined to review the administrative determination of procedural

deficiency, as did the district court in this case, because it was not attacked ... by the plaintiff, who

instead sought review of the merits of his or her Title VII claim." *Id.* at 1375-76 (citing cases).

As a result, because the EEOC Office of Federal Operations did not reach the merits of, but

instead dismissed, plaintiff's appeal for his failure to exhaust administrative remedies, this court is

not permitted to reach the merits of plaintiff's Title VII claim. *Cf. Chandler v. Roudebush*, 425 U.S.

840, 861-63, 96 S.Ct. 1949, 1959-61, 48 L.Ed.2d 416 (1976) (holding that federal employee who

properly exhausts administrative remedies is entitled to *de novo* review of the merits of his claim in

federal court). This court thus reviews only the EEOC Office of Federal Operations' dismissal of

plaintiff's appeal for untimeliness.

**C.      Plaintiff's Exhaustion of Administrative Remedies**

The Eleventh Circuit has structured the process by which this court should review the

administrative decisions that resulted in the EEOC Office of Federal Operations' dismissal of

plaintiff's appeal. In the interest of "giving the agency an opportunity to resolve its disputes

internally while protecting the complaining employee from delay and any agency bias," the Court

of Appeals concluded in *Wade* that:

> [A] district court must determine whether the employee has complied with regulatory
> requirements when the defendant raises the issue of failure to exhaust administrative
> remedies. In conducting this inquiry, the court should first ascertain what the
> regulations require of a complaining employee. It should then ask whether the
> complainant made a good faith effort to comply with the regulations and,
> particularly, to provide all the relevant, specific information available to him or her.
> No deference may be accorded the agency or complaints examiner's findings with
> respect to the employee's compliance.

796 F.2d at 1376-77.

This court thus is charged with the task of examining whether plaintiff "complied with regulatory requirements." *Id.* The first step in this inquiry is to determine what plaintiff was required to do to comply with the relevant regulations, and second, to question whether plaintiff made a good faith effort to meet those compliance burdens. *See id.* This court keeps two additional considerations in mind as it proceeds with this analysis: first, "whether the plaintiff had access to the information alleged by the agency to have been lacking;" and second, that the "purpose of exhaustion is to give the agency the information it needs to investigate and resolve the dispute between the employee and the employer. Good faith effort by the employee to cooperate with the agency and EEOC and to provide all relevant information is all that exhaustion requires." *Id.* at 1377.

**1.    Plaintiff's timely appeal of the dismissal of his complaint by the Redstone Arsenal EEO office**

The Code of Federal Regulations, at 29 C.F.R. §§ 1614.401-1614.407, establishes the procedure by which an individual complainant, like plaintiff, can appeal a final agency decision. Those sections provide, in relevant part, that:

§ 1614.401    **Appeals to the Commission.**

(a) A complainant may appeal an agency's final action or dismissal of a complaint.

...

§ 1614.402    **Time for appeals to the Commission.**

(a) Appeals described in § 1614.401(a) ... must be filed *within 30 days of receipt of the dismissal*, final action or decision. ...

(b) *If the complainant is represented by an attorney of record, then the 30-day time*

25

*period provided in paragraph (a) of this section within which to appeal shall be calculated from the receipt of the required document by the attorney.* In all other instances, the time within which to appeal shall be calculated from the receipt of the required document by the complainant.

...

### § 1614.403    How to appeal.

(c) If an appellant does not file an appeal within the time limits of this subpart, the appeal shall be dismissed by the Commission as untimely.

...

### § 1614.407    Civil action: Title VII, Age Discrimination in Employment Act and Rehabilitation Act.

A complainant who has filed an individual complaint, an agent who has filed a class complaint or a claimant who has filed a claim for individual relief pursuant to a class complaint is authorized under title VII, the ADEA and the Rehabilitation Act to file a civil action in an appropriate United States District Court:

(a) Within 90 days of receipt of the final action on an individual or class complaint if no appeal has been filed;

(b) After 180 days from the date of filing an individual or class complaint if an appeal has not been filed and final action has not been taken;

(c) *Within 90 days of receipt of the Commission's final decision on an appeal;* or

(d) After 180 days from the date of filing an appeal with the Commission if there has been no final decision by the Commission.[84]

The Redstone Arsenal EEO office issued its final decision dismissing plaintiff's complaint

on September 21, 1999.[85]  Plaintiff's attorney, John C. Taylor, signed a certified mail receipt

acknowledging his receipt of the final decision on September 24, 1999.[86]  Notice to plaintiff's

---

[84] 29 C.F.R. §§ 1614.401-1614.407 (2001) (emphasis supplied).

[85] Defendants' evidentiary submission, Tab 4 (Dept. of Army Final Decision).

[86] *Id.* (Certified mail receipt).

attorney constitutes proper notice to plaintiff. *See Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990); *see also Wilson v. Secretary, Department of Veterans Affairs,* 65 F.3d 402, 405 (5th Cir. 1995). According to 29 C.F.R. § 1614.402(b), plaintiff's thirty-day time frame within which he could appeal began once plaintiff's attorney received the agency's final decision. This would mean that plaintiff had until October 25, 1999 to respond with an appeal to the EEOC's Office of Federal Operations. *See* Fed. R. Civ. P. 6(a). Plaintiff did not contact the EEOC until December 21, 1999, almost two months late, when he mailed a letter to Redstone Arsenal EEO manager Kate F. Love noticing his intent to appeal the September 21, 1999 agency decision.[87]

In his December 21, 1999 letter to the agency, plaintiff claimed that he had fired his attorney on September 1, 1999, and further complained that he had not received communications from the Redstone Arsenal EEOC office in a timely fashion.[88] Despite these facts, the EEOC Office of Federal Operations dismissed plaintiff's appeal, because it found that plaintiff had not offered adequate justification (other than to state that he had fired his attorney on September 1, 1999) for a tolling of the thirty-day time limit set out in 29 C.F.R. § 1614.402(a).[89] Specifically, the Office of Federal Operations determined that plaintiff had failed either to claim or show that he had notified the Redstone Arsenal EEO office of his change in representation.[90] The Office of Federal Operations dismissed plaintiff's appeal as a result, and pursuant to 29 C.F.R. § 1614.403(c).

This court finds that the dismissal of plaintiff's appeal by the Office of Federal Operations

---

[87] *Id.*, Tab 5 (Letter dated Dec. 21, 1999).

[88] *Id.*

[89] *Id.*, Tab 7 (Dismissal of Appeal).

[90] *See id.*

27

was proper, because plaintiff failed to make a good faith effort to comply with the regulations governing the EEO complaint process. *See Wade*, 796 F.2d at 1376-77. Plaintiff signed a "Certificate of Rights and Responsibilities" on April 22, 1999, acknowledging both that he was represented by an attorney, John C. Taylor, and that all correspondence from the Redstone Arsenal EEO office would be directed to his attorney representative.[91] Plaintiff certified and acknowledged, further, that he was required to "inform the EEO office of a change of address immediately and that [his] failure to do so may be a basis for dismissal."[92]

Nevertheless, the record is devoid of any evidence suggesting that plaintiff attempted to notify the Redstone Arsenal EEO office that Taylor no longer represented him, and that the address to which that office's correspondence should be mailed had changed. Plaintiff does not claim to have notified the Redstone Arsenal EEO office, prior to December 21, 1999, that he had fired his attorney. Plaintiff does state in an affidavit filed with the court that he had experienced difficulty communicating with his attorney during the months of July and August of 1999, and that he "heard nothing" throughout the months of September, October, and November, either from his attorney or the Redstone Arsenal EEO office.[93] Plaintiff claims that he "called [Taylor] one last time ... informing him he was no longer my lawyer. This was in mid August 1999, message left on his answering machine."[94]

Despite plaintiff's claim to have fired his attorney, it appears that the Redstone Arsenal EEO office had no knowledge of that fact. Taylor called Redstone Arsenal EEO Specialist Jacquelyn

---

[91] *See id.*, Tab 2 (April 22, 1999 Certificate of Rights and Responsibilities), at ¶¶ 3, 6.

[92] *Id.* ¶ 8.

[93] Declaration of plaintiff at unnumbered page 2.

[94] *Id.*

White on plaintiff's behalf "on or about September 1, 1999" — the day plaintiff claims in his December 21, 1999 letter to that office that he fired Taylor.[95]  Taylor called White in response to a message regarding plaintiff's complaint that she had left Taylor on his office answering machine on August 26, 1999.  White contends that "[a]t no time during my conversations with Mr.Taylor did he indicate that he was no longer representing Mr. Muhammad.  In fact, Mr. Taylor spoke of Mr. Muhammad as his client."[96]  On these facts, the EEOC Office of Federal Operations had legitimate justification for its refusal to extend the time period to permit plaintiff to appeal the dismissal of his complaint.

Although plaintiff has not requested that this court equitably toll the thirty-day period during which plaintiff was to file his appeal, this court may toll the time period if it finds "an inequitable event that prevented plaintiff's timely action." *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993) (internal quotation marks and citations omitted).  This court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-moving party, and to resolve all reasonable doubts in that party's favor, *see Spence*, 873 F.2d at 256, particularly when the non-moving party is proceeding *pro se*.  As a result, equitable tolling could be appropriate in light of plaintiff's asserted difficulty reaching his attorney and his lack of notice that his complaint had been dismissed — both of which ostensibly caused his late appeal to the EEOC Office of Federal Operations.[97]

Equitable tolling is an extraordinary remedy, however, and should be applied "only sparingly." *Irwin*, 498 U.S. at 96, 111 S.Ct. at 457.  Moreover, "the burden is on the plaintiff to

---

[95] Declaration of Jacquelyn White ¶ 8.

[96] *Id.* ¶ 9.

[97] Declaration of plaintiff at unnumbered page 2.

show that equitable tolling is warranted." *Justice*, 6 F.3d at 1479 (citing *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 661 (11th Cir.1993)). The Eleventh Circuit has described typical situations in which equitable tolling should be applied:

> The interests of justice are most often aligned with the plaintiff when the defendant misleads her into allowing the statutory period to lapse, *see Irwin v. Veterans Administration*, 498 U.S. 89, 96, 111 S.Ct. 453, 458, 112 L.Ed.2d 435 (1990); *Burnett*, 380 U.S. at 428, 85 S.Ct. at 1055; when she has no reasonable way of discovering the wrong perpetrated against her, *see, e.g., McBrayer v. City of Marietta*, 967 F.2d 546, 547 (11th Cir.1992); or when she timely files a technically defective pleading and in all other respects acts with "'the proper diligence ... which ... statutes of limitation were intended to insure,'" *Burnett*, 380 U.S. at 430, 85 S.Ct. at 1056 (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467, 82 S.Ct. 913, 916, 8 L.Ed.2d 39 (1962)); *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1161 (11th Cir.1993). *The interests of justice side with the defendant when the plaintiff does not file her action in a timely fashion despite knowing or being in a position reasonably to know that the limitations period is running, see, e.g., First Alabama Bank v. United States*, 981 F.2d 1226, 1228 (11th Cir.1993); *Ross*, 980 F.2d at 661-62; and, of course, when she fails to act with due diligence, *see, e.g., Irwin*, 498 U.S. at 96, 111 S.Ct. at 458; *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151, 104 S.Ct. 1723, 1725, 80 L.Ed.2d 196 (1984); *Raziano*, 999 F.2d at 1541; *Hill v. Texaco, Inc.*, 825 F.2d 333, 335 (11th Cir.1987).

*Justice*, 6 F.3d at 1479-80 (emphasis supplied).

Plaintiff has not met his burden of demonstrating that equitable tolling is appropriate. First, it is clear that plaintiff was in a position to know his rights and responsibilities in the EEOC process, and further in a position to understand the structure of the complaint and appeals process. *Id.* at 1479 (citing cases). Plaintiff met with an EEO counselor in March of 1999, and was apprised of the rigors of EEOC complaint procedures.[98] Plaintiff also received a mailing from the Birmingham District EEOC office in September of 1997 that enclosed a pamphlet of information about the complaint process requirements.[99] Finally, plaintiff was himself a "former E.E.O. Counselor for Security and

---

[98] Defendants' evidentiary submission, Tabs 1 and 2.

[99] *Id.*, Tab 3 (Letter dated Sept. 30, 1997) (referencing enclosure of pamphlet to educate plaintiff as to "general

Law Enforcement — 1980 & 1981," and had helped fellow employees file EEO complaints.[100]

Further, plaintiff has not demonstrated that he acted with due diligence to monitor his complaint's progress through the EEOC system. Although plaintiff claims he fired his attorney in August of 1999, plaintiff waited approximately three more months before contacting the Redstone Arsenal EEO office to determine the status of his complaint, even though he had "heard nothing" either from his attorney or from the Redstone Arsenal EEO office.[101] *See also Lee v. United States Postal Service*, 774 F.2d 1067, 1069 n.3 (11th Cir. 1985) (stating in dicta that "the only argument that [plaintiff] seems to have made for equitable tolling is that the counsel who represented him in his first complaint to the district court and who filed his second complaint in the district court ineffectively represented him. It appears that this would not be grounds for making equitable tolling available.").

> It bears emphasizing, however, that due diligence on the part of the plaintiff, though necessary, is not sufficient to prevail on the issue of equitable tolling. The Supreme Court has made clear that tolling is an extraordinary remedy which should be extended only sparingly. *Irwin*, 498 U.S. at 96, 111 S.Ct. at 457-58. Though his dereliction be only incidental, a generally diligent plaintiff who files late because of his own negligence typically may not invoke equity to avoid the statute of limitations. "Principles of equitable tolling ... do not extend to what is at best a garden variety claim of excusable neglect." *Id.* at 96, 111 S.Ct. at 458.

*Id.* at 1479-80. As a result, this court declines to equitably toll the time period within which plaintiff was required to appeal the September 21, 1999 dismissal of his complaint.

### III. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is due to be granted.

---

guidelines and processing requirements" of the EEOC process).

[100] *See also supra* text accompanying note 15-16.

[101] *See also supra* text accompanying notes 60, 87-88.

An order consistent with this memorandum opinion shall be issued contemporaneously herewith.

DONE this _12th_ day of December, 2001.

_____

United States District Judge